FILED

2021 Aug-03  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MONICA ANDERSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE** |
| | ) | **Number: _____** |
| SYMETRA LIFE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Comes now the Plaintiff, Monica Anderson, and hereby files her Complaint against Symetra Life Insurance Company.

## PARTIES

1.     The Plaintiff, Monica Anderson ("Ms. Anderson"), is an insured under Group Long Term Disability Plan for employees of Nebraska Methodist Health System, Inc. ("Nebraska Methodist") identified as Group Insurance Policy 01-016769-00 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant, Symetra Life Insurance Company ("Symetra"), is the Administrator of the Plan. Upon information and belief, Symetra is a foreign corporation incorporated in the State of Washington, which conducts business

1

generally in the state of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Anderson brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by Symetra as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Anderson's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Anderson, as an employee insured for disability, was supposed to be treated as a beneficiary by Symetra as a

statutory fiduciary. Instead, Symetra has breached those duties and victimized Ms. Anderson by engaging in improper claim handling procedures. As described in more detail below, Symetra has clearly engaged in bad faith claim handling and Ms. Anderson, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.      Ms. Anderson is an insured for benefits under the Plan. Symetra is the administrator of the Plan. The Plan provides insureds, like Ms. Anderson, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.      At all relevant times, Ms. Anderson was employed by Nebraska Methodist Health System, Inc. and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.      Ms. Anderson, a woman forty-nine (49) years of age, worked at Nebraska Methodist until her workplace injury and resulting disabilities forced her to stop working on or about July 14, 2016.

8.      Ms. Anderson was employed by Nebraska Methodist as a Registered Nurse (RN) with several different assignments (Learning consultant RN, supplemental RN, employee health nurse and RN—Casual), whose job duties entailed a variety of tasks related to patient care. This position required frequent and prolonged standing, walking, sitting, bending, and reaching, as well as pushing,

pulling, moving and lifting heavy equipment, supplies, or clients.

9.     Ms. Anderson's medical disabilities include an injury to her right shoulder sustained while lifting a patient on the job compounded with a diagnosis of multiple sclerosis. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Ms. Anderson unable to perform her regular occupation.

10.     Ms. Anderson has been deemed disabled and awarded Social Security Disability benefits by the Social Security Administration.

11.     Ms. Anderson was approved for and began receiving LTD benefits from Symetra as of February 15, 2018 with a disability date of July 15, 2016, and LTD benefits effective October 26, 2016.

12.     Ms. Anderson received continuous LTD benefits from February 15, 2018 to October 25, 2018, totaling approximately eight months of continuous benefits.

13.     Ms. Anderson's LTD benefits were approved and paid from February 15, 2018 until October 25, 2018 because Symetra determined that she was unable to perform the material and substantial duties of her occupation, as defined under the Plan.

14.     By letter dated December 10, 2018, Symetra wrongfully terminated Ms. Anderson's LTD benefits beyond October 25, 2018.

15.     The Plan at issue, as governed by ERISA and relied upon to deny Ms. Anderson's LTD benefits states, in part:

Disabled/Disability means our determination that your sickness or injury:

- during the elimination period, prevents you from performing with reasonable continuity the material and substantial duties of your regular job.

- for the first 24 months of disability benefits, prevents you from performing with reasonable continuity the material and substantial duties of your regular job and, as a result, the income you are able to earn is less than or equal to 80% of your pre-disability earnings.

- after the first 24 months of disability benefits, prevents you from performing with reasonable continuity the material and substantial duties of any gainful occupation and, as a result, the income you are able to earn is less than or equal to 60% of your pre-disability earnings.

16.     Using this test of disability, Symetra found Ms. Anderson disabled and approved her LTD benefits for approximately eight (8) months as Ms. Anderson's plexopathy, severe pain, decreased range of motion, and medication side effects

5

prevented her from performing the material and substantial duties of her regular occupation.

17.     However, on December 12, 2018, Symetra reversed course and terminated Ms. Anderson's LTD benefits. The termination of benefits was based at least in part upon the paid reviews of Dr. Chalonda Hill ("Dr. Hill") and Dr. Joel Becker ("Dr. Becker"), neither of whom examined Ms. Anderson.

18.     At all relevant times, and prior to the termination of Ms. Anderson's benefits, she was under the consistent care of her physiatrist, Dr. Jeremy Gallant ("Dr. Gallant"), her primary care physician Dr. Jennifer Kay, and APRN (Neurology) Melissa Fulton.  Furthermore, Ms. Anderson has been evaluated by neuropsychologist Dr. Charles Jegede, Ph.D ("Dr. Jegede").

19.     Ms. Anderson suffered an injury at work while lifting a heavy patient out of a car which caused a brachial plexopathy, leading to severe pain in her right shoulder and arm which persists to this day.

20.     Ms. Anderson was also diagnosed with multiple sclerosis while undergoing treatment for her brachial plexopathy.

21.     Dr. Kay's notes from August 24, 2016 described Ms. Anderson's injury and the associated tremors in her right hand as "alarming and concerning."

22.     Ms. Anderson was later referred to her physiatrist Dr. Gallant, first visiting him on July 19th, 2016. Dr. Gallant gave her a series of epidural injections.

Unfortunately, these injections did not alleviate Ms. Anderson's pain.

23.     Ms. Anderson remained under Dr. Gallant's care for over two years. Even as late as December 8, 2018, just before Symetra gave notice to Ms. Anderson that her LTD benefits were being terminated, Dr. Gallant wrote in his report that "[Ms. Anderson] also has a significant amount of fatigue, and her activity level is substantially impaired by this. Currently, even fairly sedentary level activity for 3-4 hours is not feasible." Dr. Gallant also noted that "[Ms. Anderson] is chronically on...medications which can impair her ability to drive and can have a negative impact on her cognitive capabilities, further limiting her employability."

24.     A December 3, 2018 letter from Melissa Fulton, APRN, (one of the neurological nurses treating Ms. Anderson) underscores Dr. Gallant's statement about the side effects of Ms. Anderson's medications. Ms. Fulton states that "[The medications that Ms. Anderson] has to take to control her pain she may not be sage to work in a nursing capacity that requires critical thinking and following through. [sic] Her multiple sclerosis could also impact her cognition as time goes on as well."

25.     Ms. Anderson appealed her denial of LTD benefits by email to Symetra dated December 11, 2018.

26.     Following further neurological evaluation and treatment, a December 26, 2018 letter from Melissa Fulton states that "I again have concerns regarding [Ms.

Anderson's] ability to work as a nurse and make critical decisions, counsel patients or even to follow through."

27.    On   January   28,   2019,   Ms.   Anderson   was   evaluated   by neuropsychologist Dr. Charles Jegede, Ph.D. Dr. Jegede's report found Ms. Anderson's processing speed, visual-spatial skills, and fine visual motor task ability to be in the "extremely low" range. Furthermore, her novel problem solving and concept formation skills were in the "extremely low" range as well.

28.    Despite providing proof of her disability both before the termination of benefits  and  throughout  the  appeals  process,  Symetra  refused  to  award  Ms. Anderson's LTD benefits and issued its final termination by letter dated March 12, 2019.

29.    In its final termination letter dated March 12, 2019, Symetra relied on the opinions of paid medical reviewers Dr. Hill and Dr. Becker, as well as an "employability analysis report" by Diane Winiarski ("Ms. Winiarski").

30.    Dr. Hill, despite having neither seen nor treated Ms. Anderson, rendered an opinion that she was capable of full-time sedentary work with certain minimal restrictions despite her treating providers' prior statements to the contrary.

31.    Although Dr. Hill was not able to speak with Ms. Anderson's own neuropsychologist, and spoke only with her physiatrist and treating nurse, this paid reviewer nevertheless opined that no restrictions or limitations were warranted from

8

a cognitive perspective.

32.    Although Dr. Becker spoke with Dr. Jegede, Ms. Anderson's treating neuropsychologist, Dr. Becker repeatedly describes Ms. Anderson's results as "atypical" because he would not have expected her to fall into the "extremely low" range on several of the different evaluation categories. Dr. Becker then concluded that "the medical evidence...does not support continued limitations and restrictions to [Ms. Anderson's] activity from a neuropsychological perspective from October 26, 2018 through the present." Dr. Becker arrived at this conclusion without examining or evaluating Ms. Anderson.

33.    Symetra also relied upon the opinion of Ms. Winiarski, a vocational rehabilitation consultant in justifying its denial of LTD benefits to Ms. Anderson. Ms. Winiarski used Dr. Hill's report (which discounted Ms. Anderson's cognitive limitations despite statements to the contrary by her treating physicians) which opined that Ms. Anderson could work in a sedentary level occupation with minimal restrictions. Ms. Winiarski then concluded that Ms. Anderson could work in a nursing position deemed to be sedentary. This conclusion was reached despite Ms. Anderson's documented cognitive limitations.

34.    Symetra paid Dr. Hill nine hundred and sixty dollars ($960.00) and Dr. Becker one thousand five hundred and twelve dollars and fifty cents ($1,512. 50) for the opinion that Ms. Anderson's disabilities did not preclude her from working in a

sedentary occupation and that she had no serious neuropsychological limitations, respectively.

35.     Symetra did not allow Ms. Anderson an opportunity to review and respond to Dr. Hill's and Dr. Becker's reports, as Ms. Anderson was only informed of the content of these paid reports and Symetra's reliance upon their opinion in the final letter terminating benefits dated March 12, 2019. Rather than providing Ms. Anderson further opportunity to respond, Symetra informed Ms. Anderson that she could "bring a civil action."   A clearer breach of its fiduciary duty is difficult to imagine.

36.     As of this date, Ms. Anderson has been denied benefits rightfully owed to her under the Plan.

37.     Ms. Anderson has met and continues to meet the Plan's definition of disabled.

38.     Ms. Anderson has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

39.     Following Symetra's denial of Ms. Anderson's appeal, Ms. Anderson was approved for SSDI benefits on January 7th, 2020 and given a disability date of February 8, 2017.

40.     Unlike Symetra, which primarily relied upon the opinions of its own paid consultants and physicians, the Social Security Administration took *all* of Ms.

Anderson's medical information into account and gave proper weight to the opinions of her treating providers.

41.     Symetra's refusal to pay benefits has caused tremendous financial hardship on Ms. Anderson.

## STANDARD OF REVIEW

42.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

43.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

44.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Symetra or to any other entity who may have adjudicated Ms. Anderson's claim. Therefore, the Court should review Ms. Anderson's claim for benefits under a *de novo* standard.

45.     Upon information and belief, Symetra evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

46.     Symetra has failed to comply with the letter of the claims procedures

outlined in ERISA and therefore Ms. Anderson's claim for benefits should be reviewed by this Court under a *de novo* standard.

47.    In the alternative, if the Court finds that Symetra is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Symetra's decision to deny Ms. Anderson's LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

48.    Symetra has wrongfully denied LTD benefits to Ms. Anderson in violation of the policy provisions and ERISA, for the following reasons:

(a) Ms. Anderson is totally disabled, in that she is prevented from performing the material and substantial duties of her regular occupation;

(b) Ms. Anderson is entitled to disability under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Symetra failed to accord proper weight to the evidence in the administrative record showing that Ms. Anderson is totally disabled;

(d) Symetra's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable,

12

arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Symetra failed to allow Ms. Anderson a right to access information upon which it relied to make a final determination, and failed to allow Ms. Anderson an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(f) Symetra wrongfully denied Ms. Anderson a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(g) Symetra failed to give proper weight to Ms. Anderson's own accounts regarding the debilitating effects of her symptoms;

(h) Symetra ignored the records and opinions of Ms. Anderson's treating physicians which show that Ms. Anderson is totally disabled, and instead based its decision to deny benefits on its internal review by Symetra staff members and its paid reviewers, who had never seen or treated Ms. Anderson and who were not as

qualified as Ms. Anderson's treating physicians to formulate opinions regarding the nature and extent of her disability;

(i) Symetra failed to exercise reasonable flexibility in its claims review process to assure Ms. Anderson a full, fair review, well-reasoned, and principled of her claim;

(j) Symetra administered Ms. Anderson's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that Symetra served as both fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Ms. Anderson's interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(k) Symetra made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(l) Symetra acted in bad faith by denying Ms. Anderson's claim based upon the inability of Symetra's paid reviewers to find Ms. Anderson disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Ms. Anderson's best interests;

14

(m)   Symetra terminated Ms. Anderson's benefits without the support of any new information that altered in some significant way the previous decision over eight (8) months to pay LTD benefits to Ms. Anderson;

(n) Symetra terminated Ms. Anderson's benefits without the support of any new information that showed pertinent improvement in Ms. Anderson's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate;

(o) Symetra failed to support the termination of benefits with substantial evidence;

(p) Symetra imposed a standard not required by the Plan's provisions, by requiring objective evidence of Ms. Anderson's subjective medical conditions where such evidence cannot be reasonably provided;

(q) Symetra denied Ms. Anderson's claim for a lack of objective medical evidence when Ms. Anderson has provided ample subjective evidence of a disability and Symetra has neither identified any objective evidence that Ms. Anderson could have supplied to support the claim and has not had Ms. Anderson undergo

15

an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(r) Symetra failed to consider Ms. Anderson's non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(s) Symetra's termination of Ms. Anderson's LTD benefits failed to provide a detailed explanation and the basis of its disagreements with the opinions of Ms. Anderson's treating physicians;

(t) Symetra used Ms. Anderson's most recent work activity as evidence of functional capacity despite the Plan's specifications that a claimant remains disabled if unable to earn less than or equal to 80% of the claimant's pre-disability earnings during the first twenty-four (24) months of disability benefits;

(u) Symetra wrongfully denied Ms. Anderson's LTD benefits in such other ways to be shown through discovery and/or hearing.

49. As a result of the foregoing, the relief to which Ms. Anderson is entitled includes: (1) monthly LTD income benefits to Ms. Anderson, (2) payment of back benefits from October 26, 2018 to the date of judgment, (3) pre-judgment interest,

(4) equitable relief, including declaratory and injunctive relief, to redress Symetra's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

50.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

51.     At all times relevant to this action, Ms. Anderson was a participant of the Plan underwritten by Symetra and issued to Nebraska Methodist Health System, Inc. and was eligible to receive disability benefits under the Plan.

52.     As more fully described above, the termination and refusal to pay Ms. Anderson's benefits under the Plan for the period from at least on or about October 26, 2018 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Anderson constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.    A judgment ordering the applicable standard of review in this case is *de novo*;

2.    A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.    In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.    Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Ms. Anderson's LTD benefits; that Ms. Anderson is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.    Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6. A judgment ordering Defendant to pay Ms. Anderson's LTD benefits from October 26, 2018 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7. An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8. For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 3rd day of August, 2021.

*/s/ Peter H. Burke*
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Monica Anderson*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Symetra Life Insurance Company
c/o National Registered Agents, Inc.
2 North Jackson Street
Suite 605
Montgomery, AL 36104